IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
RICHMOND DIVISION

WILLIAM KERMIT McKELVY,

                              Plaintiff.

            v.                          Civil Action Number 3:09CV821

CAPITAL ONE SERVICES, LLC,

                              Defendant.

MEMORANDUM OPINION

THIS MATTER is before the Court on Defendant Capital One Service's ("Capital One" or "Defendant") Motion for Summary Judgment pursuant to Federal Rule of Civil Procedure 56. (Doc. No. 18.) Plaintiff responded to Defendant's Motion,[1] and the Defendant issued a Reply. The Court held a hearing on the Motion on Wednesday, August 18, 2010. For the reasons discussed below, Defendant's Motion is hereby GRANTED.

BACKGROUND

Plaintiff, who is an African American male over 40 years of age, began his employment with Capital One in 1997 as a Network Services Manager. He was promoted to Director, IT Services in 2005. Plaintiff was employed as Director, IT Services, until his employment ended on October 23, 2009. Starting in 2003, McKelvy worked under the supervision of Michael O'Neil. In September

---

[1] At the Court's August 3, 2010 hearing on Plaintiff's Motion to Strike (Doc. No. 22), the Court gave Plaintiff a deadline of August 6, 2010 by which to file his Opposition to Defendant's Motion for Summary Judgment. Plaintiff filed its Opposition brief at or about 12:38 a.m. on August 7, 2010. Because the Court finds that Defendant has not been unduly prejudiced by the delay in filing, it will consider Plaintiff's Opposition in ruling on the merits of Defendant's Motion.

1

2006, McKelvy was assigned to work with Tammy Caporale's group on a special project. (Pl.'s Opp'n Ex. 1, 7 ¶ 28.)

In the early part of 2007, while working under Caporale's supervision, Plaintiff worked on the bank e-mail integration project. Caporale decided to take Plaintiff off of the project, a decision that was supported by her supervisor, Frederick Long. (Def.'s Mot. Ex. F, Long Dep. 3-4.) Mr. McKelvy returned to Mr. O'Neil's team in September, 2007.

Ms. Caporale and Mr. O'Neil therefore, as co-managers of McKelvy that year, wrote a joint appraisal of Plaintiff for January 2007 to December 2007, in which Defendant's overall rating was inconsistent. (Pl's Opp'n Ex 17.) Caporale indicated to O'Neil that McKelvy's communication was an area that fell into the category of "action required" in the appraisal and described in the "Development Opportunities" section that in Bank Mail migration discussions, Kermit ("McKelvy") missed areas of concern raised by the customers.

At some point in 2008, Otis Jeter, one of the individuals supervised by McKelvy, went to O'Neil, who was heading the department at the time, and told him that he did not want to work for McKelvy again, and that he did not think anyone else should be working for him either. (Def.'s Ex. F, Jeter Dep. 45:1-13).

In December 2008, O'Neil and Mr. Mark Tiltman, Managing Vice President of IT organization, worked with other supervisors on Tiltman's staff to rate all the directors. At the end of 2008, Plaintiff received another appraisal with an overall rating of inconsistent. (Def.'s Ex. 17, 2008 Appraisal.) O'Neil and Tiltman jointly discussed McKelvy's performance and decided to place McKelvy on a PIP.

In February 2009, O'Neil met with Mr. McKelvy, and told him that he was going to be placed on a PIP. On March 27, 2009, Plaintiff filed a complaint with the Equal Employment

Opportunity Commission ("EEOC") concerning Defendant's alleged employment discrimination against him in violation of Title VII of the Civil Rights Act and the Age Discrimination in Employment Act ("ADEA").

On July 24, 2009, O'Neil provided McKelvy a counseling memo to provide more explicit feedback after the PIP had been initiated. On August 24, 2009, Defendant gave notice to Plaintiff that he could seek another position at capital one within sixty (60) days or be terminated. (Pl.'s Ex. 16.) The letter indicated that McKelvy was deemed to have failed to satisfy the PIP, and stated that he would be placed into reassignment beginning August 24 and ending October 22, 2009. Of the eight (8) Directors who were terminated in 2009, Plaintiff was the only one offered the opportunity to seek reassignment with Capital One. (Def.'s Mot., Ex. B, Roberson Decl.) Plaintiff filed a second charge with the EEOC claiming retaliatory discrimination on September 11, 2009. Plaintiff was terminated on October 23, 2009. On November 6, 2009, the EEOC issued Plaintiff right to sue letters related to his March, 2009 claims of discrimination in violation of Title VII and the ADEA, and related to his September 2009 claim for retaliation, respectively.

Plaintiff lays out five causes of action in his Complaint: (1) Title VII Claim for Removal of Supervisory Responsibilities; (2) ADEA Claim for Removal of Supervisory Responsibilities; (3) 42 U.S.C. § 1981 Claim for Denial of Promotion; (4) Breach of Contract of Employment and Wrongful Discharge; (5) Intentional Infliction of Emotional Distress.

## LEGAL STANDARD

A motion for summary judgment lies only where "there is no genuine issue as to any material fact" and where "the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); see also Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986). All "factual disputes and any competing, rational inferences [are resolved] in the light most favorable to the party opposing that

motion." Rossignol v. Voorhaar, 316 F.3d 516, 523 (4th Cir. 2003) (internal quotations marks and citations omitted). In their analyses, courts look to the affidavits or other specific facts pled to determine whether a triable issue exists. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

Where no genuine issue of material fact exists, it is the "affirmative obligation of the trial judge to prevent factually unsupported claims and defenses from proceeding to trial." Drewitt v. Pratt, 999 F.2d 774, 778–79 (4th Cir. 1993) (internal quotation marks omitted). Mere unsupported speculation is not sufficient if the undisputed evidence indicates the other party should win as a matter of law. Emmett v. Johnson, 532 F.3d 291, 297 (4th Cir. 2008). However, summary judgment should not be granted if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Drewitt, 999 F.2d at 778.

A plaintiff may not rely on evidence not cited in his Opposition. See Local Rule 56(B); Simmons v. D.B. Everett, 07CV172, 2008 WL 3843455, at *1 (E.D. Va. Aug. 15, 2008) (noting that "Rule 56 does not impose upon the district court a duty to sift through the record in search of evidence to support a party's opposition to summary judgment.") (citing Forsyth v. Barr, 19 F.3d 1527, 1537 (5th Cir. 1994)).

DISCUSSION

A. Plaintiff's Title VII and ADEA Claims for Removal of Supervisory Responsibilities

In his Complaint, Plaintiff alleges that Defendant classified his position as Director in a different way than that for non-African American similarly situation co-workers as of 2008, after he

4

returned to work for Mr. O'Neil's team,[2] by removing his supervisory responsibilities while maintaining the supervisory responsibilities of those others. Plaintiff's Claim fails.

Before a federal court may assume jurisdiction over a Title VII claim, a claimant must exhaust the administrative procedures enumerated in 42 U.S.C. § 2000e-5(b), including a determination by the EEOC as to whether "reasonable cause" exists to believe the charge of discrimination is true. Davis v. North Carolina Dept. of Corrections, 48 F.3d 134, 137 (4th Cir. 1995). Alleged discriminatory actions that fall more than 300 days prior to the initiation of an EEOC charge are time-barred in deferral states such as Virginia. 42 U.S.C. § 2000e-5(e)(1); Edelman v. Lynchburg Coll., 300 F.3d 400, 404 (4th Cir. 2002). Time-barred actions cannot form the basis of a Title VII lawsuit themselves but may be used as "background evidence in support of a timely claim." Nat'l R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 113 (2002).

In order to assert his claim that his lack of direct reports under O'Neil at the end of 2007 was discriminatory under Title VII, Plaintiff was therefore required to file a charge of discrimination with the EEOC within 300 days of the last date of discrimination. Plaintiff did not file his earliest EEOC Charge alleging discrimination until March 27, 2009, approximately eighteen months later, and furthermore, within the claim, did not raise the issue of his lack of direct reports.[3] Edelman v. Lynchburg College, 300 F.3d 400, 404 (4th Cir. 2002).

---

[2]Plaintiff does not pinpoint a specific date for the removal of his supervisory responsibilities in his Complaint. (Compl. 10 ¶ 30). Defendant contends that Plaintiff's claim for removal of supervisory responsibilities started in September, 2007, the dates that he returned to work with Mr. O'Neil. It appears that at least as of 2008, Plaintiff no longer had direct reports, which he previous had sometimes. (Def.'s Reply Ex. 2, O'Neil Dep. 13.; Pl.'s Ex. 10, 13.)

[3]Indeed, Plaintiff attaches his March 27, 2009 EEOC Charge which describes alleged discrimination by way of failure to promote Plaintiff starting "as early as" December 1, 2008 for various positions. It does not address the removal of supervisory responsibilities or any action from 2007. (Pl.'s Opp'n Ex. 6.)

5

In Plaintiff's ADEA claim, he contends that Defendant discriminated against him because of his age in taking away his supervisory responsibilities through removal of the direct reports. This claim relies on the same allegations as set forth in the Title VII claim. (Compl. ¶¶ 35-40.) Because Plaintiff filed his first EEOC charge in March 27, 2009, this claim fails for the same reason.

Even if Plaintiff's claims did not fail for failure to exhaust administrative remedies, he has not presented supportive facts, beyond his personal belief, to rebut Defendant's assertion that his reports were taken away because he received pushback from other associates who did not want to work with McKelvy because of his leadership style and because he was coming off of a poor performance appraisal with Caporale.[4] This is required in order to survive a motion for summary judgment in an employment discrimination claim under the McDonnel Douglas framework. McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973). Thus, the Court determines that no reasonable jury could find facts to support that the removal of Plaintiff's supervisory responsibilities through direct reports was the result of Defendant's discrimination on the basis of race or age.

B.  Plaintiff's 42 U.S.C. § 1981 Claim for Denial of Promotion

Plaintiff next claims that because of racial and gender bias under § 1981, Defendant failed to consider his application and pursuit for a promotion to the position of Director of Business Technology Management Services or an upgrade in his position. He alleges that Defendant treated non-African American applicants and employees in a more favorable manner by promoting them and upgrading their positions. (Compl. 9 ¶ F.) McKelvy asserts that as a result, he sustained a substantial amount of compensatory damages.

---

[4]Plaintiff objects to some of these statements as hearsay, however as Defendants note, they are not offered for the truth of the matter asserted, but to show Capital One's perception of Plaintiff and ultimately whether the Defendant was motivated by an unlawful motive or by legitimate, non-discriminatory reasons. See United States v. Safari, 849 F.2d 891, 894 (4th Cir. 1998)

6

The McDonnell Douglas burden-shifting analysis guides the Court in determining the propriety of granting summary judgment in a matter alleging unlawful employment discrimination. McDonnell Douglas, 411 U.S. at 792; see also Texas Dep't of Cmty. Affairs v. Burdine, 450 U.S. 248 (1981); St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502 (1993). This analysis examines: (1) whether the plaintiff has stated a prima facie case of employment discrimination; (2) whether the employer can propound a legitimate, non-discriminatory justification for the adverse employment action taken against the plaintiff; and (3) whether the plaintiff can rebut the asserted legitimate, non-discriminatory justification with evidence that it is merely a pretext for unlawful discrimination.

Using the McDonnell-Douglas framework, which is applied to claims under §1981 as well as those under Title VII, Plaintiff's claim for failure to promote must fail as well. To establish a prima facie case of discrimination in a denial of promotion claim, McKelvy must prove that (1) he is a member of a protected group; (2) he applied for the position in question; (3) he was qualified for the position; and (4) he was rejected for the position under circumstances giving rise to an inference of unlawful discrimination. See Bryant v. Aiken Reg'l. Med. Ctrs., Inc., 333 F.3d 536, 544-45 (4th Cir. 2003), cert. denied, 540 U.S. 1106 (2004).

An adverse employment action is "a discriminatory act which adversely affect[s] the terms, conditions, or benefits of the plaintiff's employment." James v. Booz-Allen & Hamilton, Inc., 368 F.3d 371, 375 (4th Cir.2004) (internal citations omitted). Denial of a promotion has long been recognized as an adverse employment action. See Bryant, 333 F.3d at 544.

Plaintiff claims that if he had not been denied positions from 2005, 2006 into the 2008, 2009 time frame, "he would have grown into and eventually become a senior director in Capital One," or

would have increased opportunity through increased responsibility, role, and visibility. (McKelvy Dep. 477-78; 66-67.)[5]

Defendant first argues that Plaintiff cannot plead a prima facie case, because he does not allege an adverse employment action. Defendant claims that McKelvy admitted during his deposition that he was not denied a position above his Director position in the senior director staff (McKelvy Dep. 477-78) or one which would have resulted in an increase in compensation. Id. 66-69, 72, 75-76 391-392.

As Defendant notes, a plaintiff's subjective view as to how a lateral transfer impacts him is not sufficient to create an adverse action. See Boone v. Goldin 178 F.3d 253, 255-56 (4th Cir. 1999) (finding that plaintiff did not meet the requirements to show an "adverse employment action" to support a Title VII claim because she did not allege discharge, demotion, decrease in pay or benefits, loss of job title or supervisory responsibility, or reduced opportunities for promotion).

Construing the facts in the light most favorable to the Plaintiff, even if the Court accepts that Defendant's failure to place him in these various positions constituted adverse employment actions due to reduced opportunities for promotion, the claim still fails under the third prong of the prima facie case.[6]

Pursuant to that prong, Plaintiff has not offered factual evidence to show that he was qualified for the positions in question, and he may not establish this element by testifying that, in his opinion, he was qualified. See Anderson v. Westinghouse Savannah River Co., 406 F.3d 248, 269

---

[5]As noted previously, any position for which Plaintiff applied and was denied that took place more than 300 days prior to his March 27, 2009 EEOC Claim must fail for failure to exhaust administrative remedies.

[6] Plaintiff notes in his deposition that he never applied for the positions he claims to have been denied because they were not posted due to the frequent modification of responsibilities and roles in the IT Department, even though positions remained the same. (Def.'s Mot. 15 n.12)

(4th Cir. 2005) (holding that a plaintiff "cannot establish her own criteria for judging her qualifications for the promotion" and "must compete for the promotion based on the qualifications established by her employer."). Furthermore, Defendant has presented evidence through the inconsistent performance evaluations and appraisals from 2007 to 2009 that Plaintiff was not performing at a satisfactory level during the time frame in which he claims he was denied positions or promotions.

Even if he had made out a prima facie case, Plaintiff has not provided facts to support a claim that he was rejected for the position under circumstances giving rise to an inference of unlawful discrimination. He has not identified evidence showing that race or age played a role in filling these positions, relying instead on self-assessments of his qualification and performance. Unsupported speculation of this nature, however, is not sufficient to defeat a summary judgment motion. See, e.g., Baber, 977 F.2d at 875. In short, Plaintiff has produced no facts on which a trier of fact could reasonably find that he was denied any promotions or lateral positions with greater opportunities for promotion because of his race or age.

In connection to this claim of failure to promote, Plaintiff also states in his declaration that Capital One uses the 360 peer review, 10x10 evaluation, and PIP in a manner with a disparate impact on the job security and opportunities of its African American male employees.[7] (Pl.'s Ex. 1,

---

[7] Plaintiff did not explicitly raise a disparate impact claim in his Complaint, however, he asserted that Defendant engaged in discriminatory activities to deny employment opportunities to himself and other African-American male employees. (Compl. ¶ 33, 39.) Plaintiff is bound by the allegations in his Complaint and cannot use his opposition to summary judgment to bring new claims. See Katz v. Odin, 332 F. Supp. 2d 909, 917 n.9 (E.D. Va. 2004) (citing Davis v. Cole, 999 F.Supp. 809, 813 (E.D.Va.1998) (refusing to consider additional allegations in response to motion to dismiss)). Because the Court finds that any disparate impact claim Plaintiff may have articulated would fail, it does not reach the propriety of this explicit exclusion.

9

McKelvy Dep. 40.)  However, Plaintiff's blanket assertion, without more, will not suffice to survive summary judgment.  See Goldberg v. B. Green & Co., 836 F.2d 845, 848 (4th Cir. 1988).

To establish a prima facie case of disparate impact discrimination under Title VII, a plaintiff must "show that the facially neutral employment practice had a significantly discriminatory impact." Walls v. City of Petersburg, 895 F.2d 188, 191 (4th Cir.1990) (citing Connecticut v. Teal, 457 U.S. 440, 446 (1982)).  This means identifying the specific employment practice being challenged, and demonstrating that the policy excluded the plaintiff, as a member of a protected group, from certain benefits of employment.  Barnett v. Technology Intern., Inc., 1 F. Supp. 2d 572, 577 (E.D. Va. 1998) (citing Waston v. Fort Worth Bank and Trust, 487 U.S. 977, 994 (1988)).

Plaintiff, however, has not presented evidence to show that the reason African American employees were allegedly ranked lower through these evaluation systems was because of their race, and has not shown how the specific elements of the evaluation process had a significant disparate impact on African American males.  Plaintiff has not submitted sufficient evidence, such as statistical information or numerical breakdowns, that Defendant's evaluation system has a discriminatory impact toward African American males.  See Barnett, 1 F. Supp. 2d at 577 (citing Cater v. Ball, 33 F.3d 450, 456 (4th Cir. 1994)) (noting that statistics oftentimes play a critical rule in establishing the existence of illegal discrimination in the workplace).  For these reasons, the Court GRANTS Defendant summary judgment on the claim of failure to promote and any related disparate impact claim that was arguably pled.

C.  Plaintiff's Wrongful Discharge Claim

Plaintiff also claims that Defendant placed him on a PIP and terminated him in retaliation for protected activity, his EEOC filings, in furtherance of its alleged animus against African

American males over 40 years of age. As noted, Plaintiff filed his first EEOC claim on March 27, 2009 and his second on September 11, 2009. Plaintiff was discharged on October 23, 2009.

Section 704(a) of Title VII contains an anti-retaliation provision. 42 U.S.C.2000e-3(a). To succeed on a retaliation claim, a plaintiff must first establish a prima facie case of retaliation. A plaintiff must show that: (1) the plaintiff was engaged in a protected activity; (2) the employer acted adversely against the plaintiff; and (3) the protected activity was causally connected to the adverse action. Laughlin v. Metro. Washington Airports, 149 F.3d 253, 258 (4th Cir. 1998). Once a plaintiff has established a prima facie case of retaliation, in the absence of direct evidence, the Court must then analyze the claim for retaliation under the McDonnell Douglas burden-shifting scheme. Id. Alleged retaliatory actions that fall more than 300 days prior to the initiation of an EEOC charge are also time-barred. 42 U.S.C. § 2000e-5(e)(1).

Plaintiff claims that Defendant retaliated against him for his March 27, 2009 EEOC filing by placing him on a PIP and terminating his employment. With respect to the claim of retaliation by through the PIP, Plaintiff's claim must fail as he has not shown that the adverse action took place after his protected activity of filing the EEOC charge. In fact, in his March 27, 2009 EEOC claim, Plaintiff states that on February 23, 2009, during a meeting with Mr. O'Neil, O'Neil told him that "[Plaintiff] was being placed on a performance improvement plan." (Def.'s Ex. 22, March 27 EEOC Claim.) Additionally, Defendant asserts that despite Plaintiff's allegation that he was placed on a PIP in retaliation for filing an EEOC charge, he received the PIP before he filed the charge. (Pl. Dep. 325-36, 338).[8] Although it is unclear from the pleadings on which specific date the PIP

---

[8]The dates on this issue and when Plaintiff was told about or put on the PIP is somewhat unclear from the parties' pleadings. Plaintiff claims in his Complaint that he was placed on the plan after his initial EEOC charge on May 24, 2009, but the PIP attached as an exhibit states a date of March 11, 2009. (Def.'s Ex. 21). Furthermore, Plaintiff acknowledged in his deposition that he was told about the PIP in February, 2009 in his EEOC claim. (McKelvy Dep. 323.)

11

went into effect, clearly the decision to place Mr. McKelvy on the PIP was made prior to his filing of the EEOC claim as he raises it therein, and his claim of retaliation as to that adverse action must fail as a matter of law, as there is a lack of causal connection required for a prima facie case. See, e.g., Scaborough v. Wachovia Bank Corp., 04CV249, 2006 WL 2828683, at *4 (W.D.N.C. Sept. 29, 2006). (Finding that though plaintiff filed his third EEOC claim and was soon thereafter discharged, "no reasonable juror could infer that his termination had been caused by the EEOC activity since the termination process had been initiated prior to the claimed action").

With respect to retaliation by way of Plaintiff's termination, Plaintiff alleges that Defendant took this action in retaliation to his March 27, 2009 EEOC claim. Defendant argues that because Plaintiff never filed an EEOC charge contesting his termination, he is barred from bringing this claim now. Plaintiff was not discharged until October 23, 2009, but filed his second and final EEOC claim on September 11, 2009. However, Plaintiff asserts that he had already received his letter on August 24, 2009 that he did not successfully complete the PIP, and which stated that he had the option of taking a reduction in title or being separated from the company within sixty (60) days. Although this was not, in fact, the date of Plaintiff's termination, it constituted more than a threat of termination. The Court will assume, arguendo, that it was an adverse employment action as it finds that Plaintiff's claim must fail on other grounds, if not on this one.

In response, Defendant meets its burden by asserting that Plaintiff was terminated following two consecutive performance appraisals that rated his overall performance as "inconsistent." (Def.'s Exs. 17 & 18). His final PIP status was deemed to be completed unsuccessfully because the necessary improvement was not achieved based on review of feedback and McKelvy's performance. See Def.'s Ex. I. A supervisor's assessment of an employee's job performance is a valid, non-discriminatory basis for an adverse employment decision. Evans v. Technologies Application &

Service Co., 80 F.3d 954, 960 (4th Cir. 1996). Although Plaintiff contends that these appraisals were part of a campaign to fabricate concerns with his performance, he has not identified any evidence in support of this allegation, or to show that Defendant's proffered reasons are pretextual. Notably, an employee's "own assertions of discrimination in and of themselves are insufficient to counter [the Defendant's] substantial evidence of legitimate, nondiscriminatory reasons for [the] adverse employment action." Williams v. Cerberonics, Inc., 871 F.2d 452, 456 (4th Cir. 1989).

Plaintiff also claims that the August 24, 2009 termination memorandum had language suggesting that Plaintiff could only receive severance pay if he released his EEOC claims against the defendant.

That letter does refer to severance pay, stating that "associates must be actively employed on their severance eligibility date and sign the general release of claims in order to receive a severance package, subject to the eligibility terms of the Associate Severance Plan." (Pl.'s Ex. 16, Aug. 24 letter, 2 n.3.) However, if Plaintiff did not receive severance for what he believed to be reasons of unlawful retaliation, he would be required to exhaust his administrative remedies by filing an EEOC claim subsequent to any denial of severance stating as much, which he has not. Additionally, Plaintiff offers no proof to suggest that the language in this termination letter is not standard language dictating expectations of employees in Plaintiff's position after the determination is made to cease their employment or offer them a different internal position. Further, the language in the letter does not overcome Defendant's proffer that Plaintiff's failure to successfully complete the PIP was the cause for his termination.

In sum, Plaintiff's personal belief does not suffice, either alone or with the context evidence, to permit a reasonable inference that his letter of termination or ultimate termination was motivated by retaliation for his March 27, 2009 EEOC claim. See Hawkins v. PepsiCo, Inc., 203 F.3d 274,

13

279-282 (4th Cir. 2000) (finding "a plaintiff's own assertions of discrimination in and of themselves are insufficient to counter substantial evidence of legitimate nondiscriminatory reasons for an adverse employment action.") (internal citations omitted). Therefore, this claim also fails.

### E. Plaintiff's Breach of Contract Claim

Plaintiff asserts a supplemental state law breach of contract claim, alleging that Capital One violated a contractual requirement not to terminate him without "good cause related to his work performance." (Compl. ¶¶ 41-45). The Court has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367 because of the common nucleus of operative facts underlying both the federal and state claims. IntraComm, Inc. v. Bajaj, 492 F.3d 285, 290 n.1 (4th Cir. 2007). Plaintiff testified in his deposition that the requirement is implied from Capital One's offer of employment letter to him, which states that "if you voluntarily terminate your employment with Capital One within one year of the effective date in the new position, you will be expected to front-end payment." (Pl.'s Opp'n Ex.14). Plaintiff conceded, however, that no one ever made any verbal promises to him regarding the terms of his employment. (McKelvy. Dep. 410-411.)

Defendant argues that nothing in Defendant's offer letter to Plaintiff negates Virginia's strong presumption of at-will employment. See Dray v. New Market Poultry Products, Inc., 518 S.E.2d 312, 313 (Va. 1999). The Court agrees, and finds that considering this presumption and the non-suggestive nature of the letter's language, no reasonable jury could find that Plaintiff's employment was not at-will. Therefore, the claim must fail as a matter of law. See Graham v. Central Fidelity Bank, 428 S.E.2d 916, 918 (Va. 1993) (finding that employer's inclusion of some of the conditions of plaintiff's continued at-will employment and listing of various conditions that might lead to termination did not imply that the contract had been converted into a termination-for-cause contract).

F. Plaintiff's Intentional Infliction of Emotional Distress Claim

Plaintiff also brings a state law claim for intentional infliction of emotional distress ("IIED"). In his Complaint, Plaintiff alleges that Defendant's commission of the above alleged acts of discrimination were deliberate, extreme, outrageous, and inflicted extreme distress upon him. Plaintiff claims that Defendant acted with malice, willfully, wantonly, and deliberately in performing those acts. Simply restating the elements of the tort without any supporting facts, however, cannot support the claim.

In Virginia, to prevail on an IIED claim, a plaintiff must prove that: (1) the wrongdoer's conduct was intentional or reckless; (2) the conduct was outrageous or intolerable; (3) there was a causal connection between the wrongdoer's conduct and the resulting emotional distress; and (4) the resulting emotional distress was severe. See Supervalu, Inc. v. Johnson 666 S.E.2d 335, 343 (Va. 2008).

Defendant asserts, and indeed it appears, that Plaintiff's evidence does not meet the standard for IIED for a number of reasons. First, Plaintiff has failed to meet the "outrageous" requirement, whereby a plaintiff must show conduct that was "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." Russ v. White, 400 S.E.2d 160, 162 (Va. 1991). Plaintiff's evidence does not meet this standard, and he does not address this issue at all in his Opposition brief.

Next, Plaintiff fails to show "severe" emotional distress, which means distress which is "so severe that no reasonable person could be expected to endure it." Harris v. Kreutzer, 271 Va. 188, 205 (Va. 2006) (quotations and citations omitted). Plaintiff alleges symptoms of loss of sleep, focus, and productivity, and notes that he saw a doctor, Mihn Tran, about his stress who prescribed him

15

Zoloft which he took on occasion. (McKelvy Dep. 481.) However, Plaintiff's activities do not rise to the level of severe emotional distress. See Russ. 400 S.E.2d at 163 (finding that harm was not sufficiently severe where plaintiff plead that she "was nervous, could not sleep, experienced stress and 'its physical symptoms,' withdrew from activities, and was unable to concentrate at work.") Although in this case, it appears that Plaintiff sought medical attention for his stress and was prescribed an anti-depressant which he took occasionally, the Court does not find that these symptoms amount to severe emotional distress, and the claim must fail.

Related to his IIED claim, Plaintiff requests punitive damages. A Title VII plaintiff is entitled to punitive damages if her employer engaged in intentional discrimination "with malice or with reckless indifference to [the plaintiff's] federally protected rights." 42 U.S.C. § 1981a(b)(1); see Ocheltree v. Scollon Productions, Inc., 335 F.3d 325, 336 (4th Cir. 2003) (noting that the terms 'malice' or 'reckless indifference' pertain to the employer's knowledge that it may be acting in violation of federal law, not its awareness that it is engaging in discrimination) (citation omitted).

Although Plaintiff recites the legal standard in his Complaint in describing behavior of Capital One employees, by claiming that Defendant "committed acts amounting to intentional infliction of emotional distress which were malicious, willful, wanton, and deliberate" (Compl. 14 ¶49), he does not present any facts which would support such a finding. Additionally, as stated above, Plaintiff's claims of discrimination by Defendant fail. Therefore, his claim for punitive damages fails as well.

## CONCLUSION

For the foregoing reasons, the Court GRANTS Defendant's Motion for Summary Judgment, and dismisses Plaintiff's Complaint with prejudice. An appropriate Order shall issue forthwith.

Let the Clerk send a copy of this Memorandum Opinion to all counsel of record.

> _____/s/_____
> James R. Spencer
> Chief United States District Judge

ENTERED this  20th   day of August 2010